**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

FILED

JUL 2 3 2018

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | | |
|---|---|---|
| **LAWRENCE WOODS,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | **W18CA203** |
| **v.** | ) | Civil No.  6:18-cv-_____ |
| | ) | Crim. No. 6:15-cr-00032-WSS-1 |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER
## 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE
## BY A PERSON IN FEDERAL CUSTODY

COMES Movant, LAWRENCE WOODS ("Woods"), appearing *pro se*, and in

support of this motion would show as follows:

### I. JURISDICTION

Woods is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence by

a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion")

contemporaneously with this Memorandum of Law. Jurisdiction is vested in this

District Court that presided over and imposed sentence pursuant to Rule 4(a) of the

Rules Governing § 2255 Proceedings. See *Liteky v. United States,* 510 U. S. 540, 562

(1994).

1

## II. <u>STATEMENT OF THE GROUNDS FOR RELIEF</u>

A.      Whether pretrial counsel's failure to: (1) Move for the recusal of Judge Walter S. Smith, Jr., who was publically reprimanded and under Federal investigation during the proceedings; (2) Challenge the Court's subject matter jurisdictional authority knowing that nothing that was possessed of questioning ever affected interstate commerce; (3) Present and discuss the final version of the PSR before sentencing; (4) Seek any mitigating expert opinions that support innocence; and (5) Acknowledge that the Plea Agreement signed was a different version than the one that was read in Court deprived Woods of effective assistance of pretrial and plea context counsel under the Sixth Amendment to the Constitution of the United States.

B.      Whether sentencing counsel's failure to: (1) Challenge the Double Jeopardy Clause violation, knowing that the lesser offense is defined in the greater offense; (2) Challenge the wrongful imposition of the § 2G2 enhancement; (3) Acknowledge the breach and faultiness of the Plea Agreement after the investigator, Special Agent Jaime Gorsuch testified; (4) Object to the entering of dubious Exhibits; and (5) Wrongfully facilitated and advised the acceptance of an unknowing and involuntary plea deprived him of effective assistance of counsel and a fair and just sentence.

C.      Whether appellate counsel's failure to: (1) Consult Woods about factual details of constitutional violations prior to filing an official Brief [Attorney Gregory L. Ahlgren]; (2) Ahlgren was disciplined by his superiors during the course of the appellate proceeding and was ultimately relieved from duty which proves his failures; and (3) Withdraw the Brief submitted by Ahlgren to make amendments and submit an effective Brief that would outline the multiple violations of the Constitution [Attorney Christopher Michael McCaffrey] deprived Woods of effective assistance of appellate counsel and a fair and meaningful appellate review.

D.      Whether Judge Walter S. Smith, Jr.'s abuse of discretion during each phase of the proceedings, as follows: (1) Not recusing himself pursuant to 28 U.S.C. § 455(a); (2) Accepting guilty plea made under obvious duress; (3) Denying Woods' Motion to Withdraw Plea of Guilty; (4) Proceeding with sentencing phase after verifying that Woods had not viewed and discussed the final PSR with his counsel; (5) Rejecting valid objections to the PSR; (6) Relying of contested facts in the PSR to support the sentencing enhancements; (7) Violating the Double Jeopardy Clause; and (8) Ordering that both sentences to be ran consecutively deprived Woods of Due Process rights as outlined in the Fifth and Fourteenth Amendments.

3

## III. STATEMENT OF THE CASE

### A.   Procedural Background

On September 8, 2015, a grand jury sitting in the United States District Court for the Western District of Texas, Waco Division returned a seven (7) count Superseding Indictment charging Woods. See Doc. 27.[1] Counts 1s - 7s charged Woods with Production of Child Pornography, in violation of 18 U.S.C. §§ 2551(a) and (e). *Id.*

On March 13, 2015, the United States Attorney in the United States District Court for the Western District of Texas, Waco Division filed a Superseding Information charging Woods. See Doc. 32. Count 8ss charged Woods with Receipt of Child Pornography, in violation of 18 U.S.C. § 2552(a)(2). *Id.* Count 9ss charged Woods with Possession of Child Pornography, in violation of 18 U.S.C. § 2552(a)(5)(B). *Id.*

On October 15, 2015, a Re-arraignment Hearing was held before Judge Walter S. Smith, Jr. ("Judge Smith"). See Doc. 36. Woods waived his right to Indictment and entered a guilty plea as to Counts 8ss and 9ss of the Superseding Information, pursuant to a written Plea Agreement. See Docs. 34, 35.

---

[1]
"Doc." refers to the Docket Report in the United States District Court for the Southern District of Texas, Laredo Division in Criminal No. 5:17-cr-00144-1, which is immediately followed by the Docket Entry Number.

4

On April 1, 2016, Woods filed a Motion to Withdraw Plea of Guilty. See Doc. 51. On April 6, 2016, a motion hearing was held before Judge Smith. Woods affirmed to tell the truth and the AUSA provided argument against the motion. After hearing both parties, the Court denied Woods' Motion to Withdraw Guilty Plea. See Docs. 51, 52, 53. Further, on April 14, 2016, Woods filed a Response re: Order denying Motion to Withdraw Plea of Guilty. See Doc. 56.

On April 14, 2016, Woods was sentenced to a total term of 360 months' imprisonment, 10 years Supervised Release, $4,000 Fine, and a Mandatory Special Assessment Fee of $200. See Docs. 58, 66.

On April 19, 2016, Woods timely filed a Notice of Appeal. See Doc. 64.

On April 24, 2017, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") issued an Order affirming the judgment of the District Court. See Doc. 77.

### B.   Statement of the Relevant Facts

#### 1.   Offense Conduct

Woods, through his attorney's advise, agreed to the following stipulation of facts:

> In September of 2014 Special Agent Dan Chadwick ("Chadwick"), Federal Bureau of Investigation, U.S. Army Criminal Investigation Division and the Temple Police Department began investigating a case

involving the defendant and minor female victims who had been enticed via Facebook to take sexually explicit conduct photos/videos of themselves and send them to the defendant who was posing as Dion Starr or Savage King. The defendant met the minors who were under the age of 18 on Facebook and claimed to be part of a modeling business that would pay money for pictures. The victims were told that the more sexually explicit the pictures, the more money they would make.

The FBI was alerted when two sister victims and their parents notified law enforcement in Boston, Massachusetts about the activity. During the same time frame, victims from the Temple, Texas area began notifying law enforcement as well. Through the investigation, law enforcement identified the defendant as Dion Starr and Savage King. It was learned that the defendant was also active duty United States Army. Law enforcement executed search warrants during the investigation and recovered numerous cell phones, computers and other media belonging to the defendant. Law enforcement then began to match the images of the defendant's phones and computers with minor victims so that the victims could be located and interviewed.

During the investigation, as an example, minors A.G., S.M., A.K., K.M. and A.M. were identified and interviewed. Each of the victims who were under the age of 18 sent sexually explicit images to the defendant via the internet. Law enforcement identified the sexually explicit images of the victims on the defendant's phones, computers and Facebook accounts, etcetera.

Law enforcement executed a search warrant on the defendant's residence on November the 21st of 2014. The residence is located in Killeen, Texas which is in the Waco Division of the Western District of Texas. On the same day the defendant was arrested and apprised of his constitutional protections which he waived. The defendant agreed to cooperate and speak with law enforcement. During the interview the defendant admitted that he was Dion Starr and Savage King and that he used these personas on Facebook. He also admitted he convinced the girls he met on Facebook and other social media that he would pay them money for pictures of themselves. He told the girls that they could make

6

more money for more explicit images. He agreed that he never paid them. He just did it to scam them into sending him sexually explicit images of themselves. The majority of the females were under the age of 18.

The defendant knowingly received and possessed images of minor females engaged in sexually explicit conduct. The images had been transported in interstate and foreign commerce using a means and facility of interstate and foreign commerce. The images had also been produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by means, including computer. In addition, some of the victims resided outside the State of Texas and sent their images from outside the State of Texas to the defendant who was in State of Texas.

See Doc. 44 at 9-12.

### 2.   Plea Proceeding

On October 15, 2015, a Re-arraignment Hearing was held before Judge Smith.

See Doc. 36. Woods waived his right to Indictment and entered a guilty plea as to

Counts 8ss and 9ss of the Superseding Information, pursuant to a written Plea

Agreement. See Docs. 34, 35. In exchange for Woods' guilty plea, the government

agreed to: (1) dismiss any remaining charges at the time of sentencing; and (2) refrain

from prosecuting the defendant for any other 18 U.S.C. violations. See Doc. 44 at 7.

### 3.   Sentencing Proceeding

On April 14, 2016, a Sentencing Hearing was held before Judge Smith. See

Doc. 51. The Court sentenced Woods to a total term of 360 months' imprisonment:

7

240 months as to Count 8ss; and 120 months as to Count 9ss with the terms imposed to be served consecutively. Followed by 10 years Supervised Release on each of Counts 8ss and 9ss with the terms to be served concurrently with each other. The Court ordered payment of $4,000 Fine and a Mandatory Special Assessment Fee of $200. See Doc. 66. All the remaining counts of the Indictment(s) were dismissed on the motion of the United States. *Id*. A timely Notice of Appeal was filed on April 19, 2016. See Doc. 64.

4.    Appellate Proceeding

On Appeal, Woods contended that the District Court failed to give adequate consideration to the fact that he suffers from Post-Traumatic Stress Disorder ("PTSD") related to his military service in Iraq. Further, Woods argued that the Court imposed special condition of supervised release limiting Woods' access to the internet is overbroad and will limit his employment opportunities. However, the Fifth Circuit opined that Woods has shown no error, plain or otherwise. Therefore, his judgment was affirmed. See Doc. 77.

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify

relief for a federal prisoner who challenges the imposition or length of his or his detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *United States v. Batamula*, 823 F.3d 237 (5th Cir. 2016). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *United States v. Kayode*, 777 F.3d 719 (5th Cir. 2014). However, a district court need not hold a hearing if the allegations are

"patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Aron*, 291 F.3d at 715 n.6. "Under 28 U. S. C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U. S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, Woods must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993)(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Fifth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."

11

*McMann v. Richardson*, 397 U. S. 759 (1970). "[T]o prove prejudice, [Woods] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).

In an effort to provide guidance as to how *Hill* applies to differing factual settings, the Supreme Court decided *Lafler* and *Frye* and established a constitutional standard applicable in all of the separate phases of a criminal trial to which the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that, but for the ineffective advice, there is a reasonable

probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, his sentence would have been significantly less harsh. See *United States v. Grammas*, 371 F.3d 281 (5th Cir. 2004); *United States th v. Conley*, 349 F.3d 837, 839 (5th Cir.2003). In a ruling on a motion under § 2255, the court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

A criminal defendant is also entitled to constitutionally effective assistance of counsel on direct appeal as of right. See *Evitts v. Lucey*, 469 U. S. 387, 396 (1985); *Reed v. Stephens*, 739 F.3d 753 (5th Cir. 2014); *United States v. Reinhart,* 357 F. 3d 521, 531 (5th Cir. 2004). A criminal defendant has a Sixth Amendment right to the effective assistance of counsel on direct appeal. *Evitts*, 469 U.S. at 396. Claims for ineffective assistance of appellate counsel are governed by the two-part *Strickland* standard. See *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013).

In order to prove ineffective assistance of appellate counsel, Woods must first show that his attorney's performance was deficient, and second, he must demonstrate that such deficiency caused him prejudice. See *Strickland*, 466 U.S. at 687; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998). To prevail on his claim that his attorney failed to adequately brief an issue on direct appeal, Woods must show initially that the appeal would have had, with reasonable probability, a different outcome if his attorney adequately addressed the issue. See *Jones*, 163 F.3d at 302. "This requires that [the Court] counter-factually determine the probable outcome on appeal . . ." *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999). Woods must then demonstrate that his attorney's deficient performance led to a fundamentally unfair and unreliable result. See *Goodwin*, 132 F.3d at 176. A claim of ineffective assistance of counsel is reviewed *de novo*. See *Williamson*, 183 F.3d at 461. The Court must first determine whether there is a reasonable probability that, but for counsel's deficient performance, the result of the appeal would have been different.

Counsel is not deficient for not raising every non-frivolous issue on appeal. See *Williamson*, 183 F.3d at 462. Instead, to be deficient, the decision not to raise an issue must fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid,

meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63.

Rule 8 of the Rules Governing § 2255 Proceedings states: "If the [§ 2255] motion is not dismissed, the judge must review the answer, any transcript and records of prior proceedings, and any materials submitted... to determine whether an evidentiary hearing is warranted". See *United States v. Cavitt*, 550 F.3d 430, 441-42 (5th Cir. 2008). In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record and a credibility determination is necessary in order to resolve the issue. See *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255.

## V. <u>DISCUSSION</u>

As a preliminary matter, Woods respectfully requests that this Court be mindful that *pro se* pleadings are to be construed liberally. See *United States v. Kayode*, 777 F.3d 719 (5th Cir. 2014); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

John Richard Donahue ("Donahue"), Woods' appointed attorney, was completely ineffective and incompetent as a legal counselor throughout the entire duration of the case. It should be understood that it is impossible for a first time defendant in the legal system to be capable of accurately discerning effective representation versus ineffective representation where there was no standard for comparison prior to the end result of the case.

A.   <u>Pretrial Counsel's Failure To: (1) Move for the Recusal of Judge Smith, Who Was Publically Reprimanded and Under Federal Investigation During the Proceedings; (2) Challenge the Court's Subject Matter Jurisdictional Authority Knowing That Nothing That Was Possessed of Questioning Ever Affected Interstate Commerce; (3) Present and Discuss the Final Version of the PSR Before Sentencing; (4) Seek Any Mitigating Expert Opinions That Support Innocence; and (5) Acknowledge That the Plea Agreement Signed Was A Different Version Than the One That Was Read in Court Deprived Woods of Effective Assistance of Pretrial and Plea Context Counsel Under the Sixth Amendment to the Constitution of the United States.</u>

1. <u>Failure to Move for the Recusal of Judge Smith, Who Was Publically Reprimanded and Under Federal Investigation During the Proceedings</u>

In accordance with the Sixth Amendment of the U.S. Constitution, every citizen has a right to effective counsel. In accordance with the Federal Rules of Criminal Procedures ("FRCP"), Rule 4131 discusses the failure to secure a judges recusal. It plainly states that the U.S. Constitution requires recusal where probability of actual bias on part of a judge or decision maker is too high to be constitutionally tolerable. See *Hurles v. Ryan*, 706 F.3d 1021 (9th Cir. 2013). This rule implies that the attorney on his own accord, must do what is in the best interest of the entire Legal system and secure the judges recusal. Especially when the circumstances, like an allegation of criminal activity, points to evidence that Judge Smith would display deep-seated bias or antagonism that would make fair judgement impossible. Likewise, Rule 4054 of the FRCP discusses the failure to move for the recusal of a judge. This rule has made it plain to see that a lawyers lack to properly request the recusal of a judge who satisfies the manifest necessity is negligent and has violated Due Process rights as outlined in the Fourteenth Amendment.

Donahue's ineffective counseling resulted in a unfair and constitutionally prejudice conviction. The outcome would have been significantly different had Donahue did his job and challenged the validity of Judge Smith's presiding over this case. Accordingly, Woods' sentence should be vacated.

2.   <u>Failure to Challenge the Court's Subject Matter Jurisdictional Authority Knowing That Nothing That Was Possessed of Questioning Ever Affected Interstate Commerce</u>

This Court is legally unauthorized to hear these charges on account of Subject Matter Jurisdiction. 18 U.S.C. § 2252(a)(1) punishes any person who knowingly mails, or transports or ships in interstate or foreign commerce by any means, including by computer, any child pornography. The analysis turns on what Congress meant by the phrase "transports in interstate commerce." Under the plain language of § 2252(a)(1), the statute requires that a person mail, transport, or ship child pornography interstate. That is to say, a plain reading of the statute seems to require at least some method of interstate travel.

18 U.S.C. § 2252(a)(1) does not include the word "facility." Thus, the phrase "interstate or foreign commerce" modifies the *actus reus* proscribed in the statute--mailing, transporting or shipping child pornography. Unlike the Travel Act, § 2252(a)(1)'s jurisdictional element is not focused on the means the defendant uses to mail, transport, or ship child pornography, and its connection to interstate commerce. Rather, it requires that the defendant mail, transport, or ship child pornography interstate. Thus, the United States Court of Appeals for the Ninth Circuit precedent indicates that criminal statutes punishing the transmission of the relevant

material in interstate or foreign commerce require the material itself to cross state lines. See *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008).

Donahue should have challenged the courts authority to preside over the case at the exact moment that it was discovered that no images were found on any of Woods' devices.

### 3.   Failure to Present and Discuss the Final Version of the PSR Before Sentencing

Here, Donahue failed to present the final PSR to Woods prior to sentencing. He displayed blatant ineffective counsel when he failed to present and discuss the probation officer's findings that were annotated in the PSR within seven (7) days of the sentencing hearing.

In accordance with the Federal Rules of Criminal Procedures Rule 32(e)(2) and Rule 32(i)(1)(A), in general, at sentencing, the appointed counsel must abide by these rules and procedures set forth by the law. This is another example of how Donahue made a mockery of the judicial system by breaking the law and doing whatever he wanted, whenever he wanted to. This lack of action is a Plain Error that caused prejudice against Woods and spiraled into other events that lead to Woods' exposure to an unlawful sentencing.

### 4. Failure to Seek Any Mitigating Expert Opinions That Support Innocence

Donahue did not attempt to investigate this case any further than what the prosecuting attorney has told him. Had Donahue hired a neutral party investigator, it would have been discovered that None of the images found were on any of the movants devices that were seiged during a raid of his home. This is crucial information because the Federal Rules of Criminal Procedure 32(a)(1)(A) states that the court can not accept a guilty plea with insufficient factual basis. An investigator would have also revealed that messages that were found on Facebook were not linked to any of Woods' devices or accounts. Each message's IP address was from a different state while there is proof that Woods was in Texas during the exact same time frame. This factual basis is crucial to Woods' defense and alibi. Had Donahue done his job and actually looked for evidence that supported a defense, or at minimum, challenged the evidence that was presented, Woods would never have pled guilty to an accusation that he was completely innocent of. The attorneys ineffective assistance of counsel violated Woods' Constitutional rights and the laws that govern Due Process.

More so, Donahue failed to seek expert opinions to provide a solid defense that would prove Woods' innocence. He never looked outside of the prosecutor's

discovery packet to build a defense contrary to the allegations. Had Donahue hired an investigator to research and interview witness, he would have discovered that Woods suffered from PTSD and was unable to knowingly and willingly make a guilty plea and accept a Plea Agreement. This is crucial information that would have caused a different outcome. A person suffering from PTSD would more than likely resort to a psychological defense strategy that would trigger him to shutdown and be accepting to anything a superior suggests or orders. Woods insist that the only reason that he pled guilty to the charges was in an attempt to find the quickest and easiest solution to the problem, even if it meant sacrificing himself.

Donahue failed as a representative and because of his lack of counsel, Wood accepted a bogus plea and pled guilty to a crime that he did not commit.

Donahue has made it clear that he did not intend to represent Woods in an attempt to prove his innocence but rather to help the government secure a conviction that would boost the ratings for the Assistant District Attorney. Donahue, erred by not taking the appropriate steps to examine the discovery and present a reasonable defense to the ridiculous allegations that were brought before the court against Woods. Donahue was completely unable to defend Woods with the minute amount of time that was spent interviewing him [Woods] about the case and points. Without the full story it is impossible to prepare and operate effectively as a counsel for a movant who wishes to go to trial.

In addition, Donahue never attempted to seek a professional opinion about whether or not Woods, who has been diagnosed with PTSD, was capable of pleading guilty at the time of the hearing. It was impossible for the attorney to determine if Woods was mentally prepared for such a traumatic episode such as trial. Donahue erred by convincing and allowing Woods to speak in open court.

5.    <u>Failure to Acknowledge That the Plea Agreement Signed Was A Different Version Than the One That Was Read in Court</u>

Donahue has either allowed or has assisted in manipulating Woods and the Court by secretly switching the Plea Agreement that was actually signed with a similar but more dangerous agreement that was read by the government's attorney. The signed Plea Agreement can be examined to find that the final page, which is the signature page, was intentionally formatted to have space for nothing but the signature. As fair fetch as this may sound, Donahue has attempted and succeeded at tricking Woods into signing the Plea Agreement. For the record, on the day that the Plea Agreement was signed, Donahue brought to Woods nothing but a signature page to sign and used Woods' trust as a weapon to convince him to sign without reading the actually agreement. Woods insist that he did not realize that the versions had been switched until it was read in Court. Let the record reflect that Woods plainly said "NO" to the question of whether the plea deal agreement was correct. The transcript will provide the truth of this matter.

**B.**     **Sentencing Counsel's Failure To: (1) Challenge the Double Jeopardy Clause Violation, Knowing That the Lesser Offense is Defined in the Greater Offense; (2) Challenge the Wrongful Imposition of the § 2G2 Enhancement; (3) Acknowledge the Breach and Faultiness of the Plea Agreement After the Investigator, Special Agent Jaime Gorsuch Testified; (4) Object to the Entering of Dubious Exhibits; and (5) Wrongfully Facilitated and Advised the Acceptance of An Unknowing and Involuntary Plea Deprived Him of Effective Assistance of Counsel and A Fair and Just Sentence.**

1.     Failure to Challenge the Double Jeopardy Clause Violation, Knowing That the Lesser Offense is Defined in the Greater

Woods' right against double jeopardy was violated because possession of sexually explicit material under 18 U.S.C. § 2252(a)(4)(B) was lesser-included offense of receipt of sexually explicit material and government had not sufficiently alleged separate conduct; Woods' consecutive sentences for both receipt and possession of material involving sexual exploitation of minors constituted plain error and that this affected substantial rights by imposing on him potential collateral consequences of an additional conviction.

It should be beyond belief to this Court that Woods' counsel and the United States Attorney, who are well educated and well trained in the complicated science of law, did not know that the counting of 'possessing,' along side the count of 'receiving' would satisfy the Double Jeopardy Clause. This is without question an illegal sentence, which violates the Woods' right to Due Process of Law.

23

Woods' rights were violated and his due process rights were ignored by Donahue. Because of this lack of action, Woods was prejudiced and received a sentence that was constitutionally wrong.

Moreover, and lets not loose sight that, Woods pled guilty to this illegal and unlawful sentence, which was not authorized by any statute or sentencing guideline, on the horrible advice and defective assistance of the appointed counsel.

The defense counsel in this case was no more than a COP-OUT-MAN, who knew at all times that Woods was being sentenced illegally and charged twice for the same crime. Donahue willfully and deliberately refused to object to this illegal sentence and allowed Woods to plead guilty to a charge that was legally inaccurate. Donahue's deliberate indifference and ignorance of the Sentencing Guidelines in this guilty plea context was prejudicial because counsel's egregious error resulted in a multiple level increase in Woods' guideline range that led to a 360-month sentence.

In addition, Donahue's failure to correctly advise Woods about what he was actually pleading guilty to was extremely prejudicial to Woods, in that he [Woods] would not have accepted the Plea Agreement had he known that he was pleading guilty to an illegal sentence. See *United States v. McCoy*, 215 F.3d 102, 108 (D.C. 2000); *United States v. Granados*, 168 F.3d 343, 346 (8th Cir.1999).

Donahue has the obligation to conduct a reasonably substantial, independent investigation. See *Elmore v. Ozmint*, 661 F.3d at 804. The Supreme Court has explained the governing standard:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91.

2. <u>Failure to Challenge the Wrongful Imposition of the § 2G2 Enhancement</u>

Donahue failed to challenge the wrongful imposition of the USSG § 2G2 enhancement.

The District Court failed to find facts necessary to support enhancement regarding ages of children depicted in pornography by preponderance of evidence when those facts were contested by defendant. In *United States v. Tidwell*, No. 05-7018 (10th Cir. 2006), the defendants sentence was reversed and case was remanded for resentencing.

25

A district court may not satisfy its obligation to find contested facts supporting a sentencing enhancement by simply adopting the PSR as its finding. In *Booker* and *Fanfan,* it was stated that unless there's been a jury finding or an admission by the defendant to certain sentencing factors that they should not be considered in the computation of the guidelines. *Id.*

      3.    <u>Failure to Acknowledge the Breach and Faultiness of the Plea Agreement After the Investsigator, Special Agent Jaime Gorsuch Testified.</u>

While cross-examining SA Gorsuch of the U.S. Army CID, he stated under oath that "no image of any persons named in the Plea Agreement as victims were found" in any of Woods' devices – that were seized during his investigation. This statement is crucial evidence that would show beyond doubt that the case is bogus and that there was a breach of the Plea Agreement. The entire Plea Agreement was false and malicious, hence, Donahue failed to acknowledge its fault.

      4.    <u>Failure to Object to the Entering of Dubious Exhibits</u>

Donahue allowed for the government's attorney to enter a photograph of Woods' vehicle(1999 GMC YUKON), that was alleged to have been at Lions Park on September 1, 2014. After Woods pled guilty to the charges, the photo was shown to him. Immediately, Woods' examined the photo that was in the discovery and noticed that the background of the photo was clearly of a hospital that is located on

the Fort Hood Military installation in Texas. When Woods understood that this was the evidence being used against him, he rejected the photo as being accusatory and accepted it as an Alibi of his whereabouts on the day of questioning. This fact should have brought into questioning the integrity of the witnesses credibility and ability to use the photo as incriminating. However, it was found out that Donahue discussed Woods' findings with the government's attorney, who in turn, edited the photo and "cropped-out" the background of the photo and zoomed in to ensure that only the license plate of Woods' vehicle would be seen in the photo. This is an example of malicious prosecution, being performed by the government.

This proves that Donahue and the government were working "together" to secure Woods' conviction.

### 5. Wrongfully Facilitated and Advised the Acceptance of An Unknowing and Involuntary Plea

"[C]riminal justice today is for the most part a system of pleas, not a system of trials...[T]he right to adequate assistance of counsel cannot be defined or enforced without taking account of the central role plea bargaining plays in securing conviction and determining sentence." *Lafler v. Cooper, 132* S. Ct. 1376, 1388 (2012). Because of "[t]he reality [] that plea bargains have become so central to the administration of the criminal justice system...," *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012), the

Supreme Court recently recognized that the Sixth Amendment right to counsel "extends to the plea-bargaining process. During plea negotiations defendant are entitled to the effective assistance of competent counsel." *Lafler*, 132 S. Ct. at 1384 (internal citations and quotation marks omitted); see also, *Frye*, 132 S. Ct. at 1407.

The Fifth Circuit has observed that providing counsel to assist a defendant in deciding whether to plead guilty is "'[o]ne of the most precious applications of the Sixth Amendment.'" *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004) (quoting *Reed v. United States*, 354 F.2d 227,229 (5th Cir. 1965)). When considering whether to plead guilty or proceed to trail, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice. See *Teaque v. Scott*, 60F.3d 1167, 1170 (5th Cir. 1995). Where a defendant persists in a plea of not guilty, counsel's failure to properly inform him about potential sentencing exposure may constitute ineffective assistance. *United States v. Ridgeway*, 321 F.3d 512, 514 (5th Cir. 2003).

To obtain relief on an ineffective assistance claim, Woods ultimately must demonstrate that his attorney's performance was deficient, and that there is a reasonable probability that, but for counsel's deficient performance, he would have proceeded to trial. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("*Strickland*"); see also, *Lafler v. Cooper*, 132

S. Ct. 1376 (2012) ("*Lafler*"); *Missouri v. Frye*, 132 S. Ct. 1399 (2012) ("*Frye*"); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010) ("*Padilla*") ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

In this case, Donahue exhibited a terrible display of effective counsel when he encouraged a bogus Plea Agreement that was factually void of any truth to support the conviction. Donahue failed to challenge several topics prior to Woods' guilty plea. For example: subject matter jurisdiction, insufficient factual basis, and presenting an affirmative defense given by the statute.

The Plea Agreement was made and accepted while Woods was under duress and psychologically unfit. The basis of the Plea Agreement was designed from false statements that have been debunked and are incomplete of facts.

Although Woods pled guilty to possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(1), not one image set the statutory definition of child pornography and thus, finding of guilty was factually deficient with regards to every aspect of this conviction. In *United States v. Page,* (2011 CCA Lexis 380), the trial court only affirmed so much of finding of guilty as found that he actually possessed. The point is that it must be impossible to convict a person without actual proof and with fictitious threats.

Donahue, in his indifferent attitude, recommended for Woods to enter into a dubious Plea Agreement that was designed around lies. It should be known that the government has deliberately manipulated the court and Woods by stating that they can "beyond a reasonable doubt" prove that Woods 'Possessed' and 'Received' child pornography from six specific individuals, who were named in the Plea Deal. However, during the sentencing phase, and according to the PSR, the leading investigator confessed on the witness stand that NO photos of any of the specific individuals named in the plea deal were found on any of Woods' property.

Furthermore, it is documented in the PSR Addendum (p. 3A, in response #6), that " Law enforcement was unable to accurately determine the age of the females depicted in the images as the images were close up". Despite this affirmation, the government still made an approximation of 150-299 images found and considers this amount conservative. It should be obvious that this is a plain error to assume that unidentified persons are under age when no evidence within the images themselves can lead an average person to believe that the persons were under age.

In *Minnesota v. Camady*, the courts insist that the prosecutors "must prove that the individual is under the age and that the accused knew the age of the person depicted". This entire case is built upon hearsay with absolutely zero evidence to support a conviction. Therefore, the appropriate remedy is to vacate all charges, sentences, and convictions.

If we apply the Burden of Proof Test as described in *Minnesota v. Camady* and use the government's definition of Child Pornography together, it is clear that any evidence that supports a conviction must be of an "identifiable minor". The Judge and the Prosecutor Must make clear that the images in question depict images of actual "identifiable minors" to support a conviction. The images must be recognizable as an actual person by the persons face, likeness, or distinguishable likeness (birthmark, scar, tattoo etc.). It also will be clear that a conviction must require that an average person would determine beyond a reasonable doubt that the image is of a minor and not an under developed 18-year old. In conclusion to this ground being made, it should be known that Woods was unjustly convicted without evidence to support a fair sentence.

In *Brock-Miller v. United States,* (No. 16-3050) (7th Cir. 2018), it was found that the lawyers failure to investigate various aspects of the cases discovery, led to advising her to take a deal that, "was really no deal at all," she argued. Brock-Miller, just like the movant, wrongly thought that she was facing 20 years, when in fact she was sentenced to far more. Due to the ineffective assistance of counsel displayed by Donahue, the monvant ignorantly accepted a plea deal agreement that according to the sentencing guidelines, had the potential to reach 360 months, the equivalent to 30 years in prison.

As such, Donahue performed below an objective standard of reasonableness. Had he familiarized himself with the facts and researched the applicable law and sentencing guidelines, he would have been able to correctly inform Woods of the likely consequences and hurdles that he faced if he pled guilty or proceeded to trial. He simply failed to do so, and as a result, Woods was prejudiced by receiving a 360-month sentence. *Glover*, supra. Donahue misrepresentation of material facts, which Woods wholly relied on, constituted deficient performance. He suffered prejudice from Donahue's acts and omissions when he received a 360-month sentence. As such, Woods easily meets *Strickland*'s two prong test for ineffective assistance of counsel and relief should be granted in the first instance. Donahue's errors in this case were so blatant and flagrant that the Court can conclude that they resulted from a lack of experience, or neglect rather than an informed professional deliberation. He failed his duty to properly advise Woods.

Donahue's advice was not a predication, probability, or an estimate, but rather a lack of communication with Woods. In turn, Woods had to wholly rely on his erroneous advice. Thus, Woods was not fairly apprised of the consequences of his decision to plead guilty. In other words, Woods' reliance on Donahue's significantly flawed advice about the consequences of pleading guilty rather than proceeding to trial violated his due process rights. See *Hill*, 474 U.S. at 56.

Had Donahue advised Woods of the true sentencing exposure he faced if he pled guilty, there is a reasonable probability that he would have proceeded to trial. Worse yet, Donahue failed to negotiate any reasonable plea agreement with the government that would have benefitted Woods.

Donahue did not put the government's case to any kind of adversarial test. Had he done so, there is a reasonable probability that Woods would have been found not guilty at trial or benefitted with a significantly less harsh sentence.

Accordingly, Woods' conviction and sentence should be vacated for relief in the first instance.

C.   **Appellate Counsel's Failure To: (1) Consult Woods About Factual Details of Constitutional Violations Prior to Filing An Official Brief [Attorney Gregory L. Ahlgren]; (2) Ahlgren Was Disciplined by His Superiors During the Course of the Appellate Proceeding and Was Ultimately Relieved From Duty Which Proves His Failures; and (3) Withdraw the Brief Submitted by Ahlgren to Make Amendments and Submit An Effective Brief That Would Outline the Multiple Violations of the Constitution [Attorney Christopher Michael Mccaffrey] Deprived Woods of Effective Assistance of Appellate Counsel and A Fair and Meaningful Appellate Review.**

On appeal, Ahlgren was Woods's appointed counsel, he failed to consult Woods about factual details of constitutional violations prior to filing an official Brief. As such, Woods did not have any input into his appeal. Ultimately, Ahlgren was disciplined by his superiors during the course of the appellate proceeding and was ultimately relieved from duty which proves his failures.

On the other hand, McCaffrey, the alternate counsel, failed to withdraw the Brief submitted by Ahlgren. He made no effort to make amendments and/or submit an effective Brief that would outline the multiple violations of the Constitution.

Both attorneys failed to acknowledge that Judge Smith should not have been presiding over this case because his judgments are questionable as discussed below.

Accordingly, Woods's conviction and sentence must be vacated so that he may plea anew.

D. **Judge Smith's Abuse of Discretion During Each Phase of the Proceedings, As Follows: (1) Not Recusing Himself Pursuant to 28 U.S.C. § 455(a); (2) Accepting Guilty Plea Made Under Obvious Duress; (3) Denying Woods' Motion to Withdraw Plea of Guilty; (4) Proceeding with Sentencing Phase After Verifying That Woods Had Not Viewed and Discussed the Final PSR with His Counsel; (5) Rejecting Valid Objections to the PSR; (6) Relying of Contested Facts in the PSR to Support the Sentencing Enhancements; (7) Violating the Double Jeopardy Clause; and (8) Ordering That Both Sentences to Be Ran Consecutively Deprived Woods of Due Process Rights As Outlined in the Fifth and Fourteenth Amendments.**

In this case, Judge Smith, who presided over Woods' trial was a presiding judge over previous trials while 'under the influence of alcohol' and was 'not functional' because of his drinking habits and therefore was 'unfit to preside over trials.' This type of unfit and dysfunctional behavior was a continuously practiced pattern of Judge Smith that stretched throughout time without any interruptions for

32 years and did not end until the month of September in 2016. It was also during that time of 2016 that Judge Smith inappropriately sentenced Woods and many others so similarly situated. Furthermore, the Judicial Council of The Fifth Circuit Court of Appeals found that Judge Smith made 'inappropriate and unwanted physical and non-physical advances' toward a female courthouse staff member in his court chambers in 1998.

Judge Smith, in a pathetic attempt to "cushion" and prove that he would remain tough on crimes, especially of a sexual nature, considering the allegations against himself, went way beyond a reasonable sentence while presiding over this case, violating the Eighth Amendment.

      1.    <u>Not Recusing Himself Pursuant to 28 U.S.C. § 455(a)</u>

Judge Smith abused his discretion when he did not recuse himself throughout the proceedings of this case. Because Judge Smith's pending Grand Jury investigation was a violation of the U.S. Constitution, his failure to recuse himself is also a violation of Due Process in accordance with the Fifth and Fourteenth Amendments.

First, Woods argues that the Judge was biased and has failed to impartially and competently perform Judicial duties. The right to a fair and impartial trial is fundamental to the litigant. Fundamental to the Judiciary is the public confidence in the impartiality of our judges and the proceedings over which they preside. This is the

purpose of 28 U.S.C. § 455(a). The goal of section 455(a) is to avoid even the appearance of impartiality. Put simply, avoiding the appearance of impropriety is as important in developing public confidence in our judicial system as avoiding impropriety itself.

In *Hurles v. Ryan*, 706 F.3d 1021 (9th Cir. 2013), it insist that the U.S. Constitution requires recusal where probability of actual bias on part of a judge or decision maker is too high to be constitutionally tolerable.

There is a "presumption of honesty and integrity in those serving as adjudicators". Therefore we should not, even by inadvertence, impute to judges a lack of firmness, wisdom, or honor. See *Bridges v. California*, 314 U.S. 252, 273, 62 S. Ct. 190, 86 L. Ed. 192.

In circumstances like this case, the Judge is required to have the integrity to take the initiative to resign, recuse, or disqualify himself in order to save time, money, and the reputation of the entire Judicial system, especially other Judges who are not morally compromised.

It is without a doubt that Judge Smith, in this case, wholly abandoned his Judicial role in such a manner that no reasonable person would make an analysis that the trial is fair and unbias. In accordance with law, 28 U.S.C. § 455(a) puts the judge under a self-enforcing obligation to recuse himself where legal grounds exist for

disqualification. The standard is no longer a subjective one but is now objective. The statute does not "allow" a judge to disqualify himself if he thinks he could be affected by external matters, such as being under investigation. Rather, the statute "Demands" him to disqualify himself if the public may perceive him, or his rulings, as being affected. Thus a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street.

Keep in mind that the Fifth Circuit Court of Appeals Judicial Council found that Judge Smith had made "inappropriate and unwanted Physical and non-physical sexual advances" toward a court clerk in his chambers, which it deemed " in contravention of existing standards of behavior for Federal Judges". The Councils order also said that Judge Smith, "does not understand the gravity" of the inappropriate behavior and that "he lied" to investigators. The magnitude of this statements only should make it plainly clear that Judge Smith was incapable of presiding over Woods' case with honesty and integrity. There is no way that this injustice should prevail during these perilous times when the notorious "#METOO" movement is going viral and so easily accessible. This circumstance fairly falls under the umbrella of the "Fruit of the Poisonous Tree Doctrine"! Judge Smith was poison and everything he touched pertaining to this case was also poisoned by proximity.

The guilty plea should have never been accepted and the denial of the Withdrawal of Woods' guilty plea should have been accepted. Also, the cruel and Constitutionally illegal sentence should have never been imposed on Woods.

The fact of the matter is that Woods pled guilty on October 15, 2015 and Judge Smith was reprimanded in December of 2015. Which means that up until December of 2015, Judge Smith was still under investigation and morally compromised while presiding over Woods' proceedings. Had Judge Smith done the right thing and recused himself, Woods would not have been subjected to a prejudicial judgement and violation of his Constitutional rights and Due Process.

### 2-3.  Accepting Guilty Plea Made Under Obvious Duress and Denying Woods' Motion to Withdraw Plea of Guilty

Judge Smith erred by accepting Woods' guilty plea while he was obviously under duress. Woods boldly declared that the factual basis of the plea deal agreement was incorrect despite the fact that Donahue did not object to the furthering of the proceeding. The Constitution insist that the Judge will not accept a plea deal from a movant who is under duress or is not psychologically capable of making such a decision.

Furthermore, once the movant decided that he could no longer operate under duress and prayed for the court to allow for a Withdrawal of the Guilty Plea, the Judge erred by denying the Motion and moving forward with the proceedings.

38

### 4-6. Proceeding with Sentencing Phase After Verifying That Woods Had Not Viewed and Discussed the Final PSR with His Counsel, Rejecting Valid Objections to the PSR, and Relying of Contested Facts in the PSR to Support the Sentencing Enhancements

Judge Smith violated Woods' Constitutional rights when he continued the Sentencing Hearing after being made aware that the revised PSR had not been viewed by Woods.

In accordance with the Federal Rules of Criminal Procedures Rule 32(e)(2) and Rule 32(i)(1)(A), in general, at sentencing, the court must verify that the defendant and the defendant's attorney have read and discussed the Presentencing report and any addendum to the report. In addition the rule states that the PSR must be reviewed by a defendant no less than seven (7) days prior to sentencing. This is a Plain Error that Judge Smith decided to ignore and abused his discretion.

Even more to the point, Judge Smith erred by not rescheduling a sentencing hearing when Woods declared that he had not seen or discussed the final version of the PSR with his attorney prior to receiving the sentence. Also, during this sentencing phase, Judge Smith erred by adopting the recommendation of the Probation Officer. The PSR, wrongly applied multiple enhancements that ultimately led to Woods' 360-month sentence, which was absurdly cruel and unusual.

Woods' Constitutional rights have been totally violated and he was never afforded the luxury of Due Process. The only fair remedy for this unjust demonstration is to vacate the sentence.

### 7-8. Violating the Double Jeopardy Clause and Ordering That Both Sentences to Be Ran Consecutively

Judge Smith violated Woods' Constitutional rights when he both convicted and sentenced him [Woods] for both Possession and Receipt of Child Pornography in violation of the Double Jeopardy Clause.

Defendant's right against double jeopardy was violated because 'possession' of sexually explicit material under 18 U.S.C. § 2252(a)(4)(B) is a lesser-included offense of 'receipt' of sexually explicit material, and the government had not sufficiently alleged separate conduct. Woods' consecutive sentences for both receipt and possession of material involving sexual exploitation of minors constituted plain error and that this affected substantial rights by imposing on him potential collateral consequences of additional conviction.

Possession of child pornography under 18 U.S.C. § 2252(a)(5)(B), does not require proof of element that receipt under 18 U.S.C. § 2252(a)(2), does not; under Blockburger Test, offense of possessing child pornography is lesser included offense of receipt of child pornography.

Because offense of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) is lesser included offense of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), conviction and punishment for both is therefore constitutionally impermissible.

Allegation of different dates of commission for each offense by itself is insufficient to carve out separate conduct; once person receives something, that person also necessarily possesses it as of that moment, based upon single action (like downloading file); thus, merely citing different dates or date ranges for receipt and possession charges alone does not suffice to separate conduct for double jeopardy purposes; rather, government must allege and prove distinct conduct underlying each charge, whether conduct underlying each charge occurred on same or different dates.

In short, a guilty plea or Plea Agreement does not waive a double jeopardy challenge to a charge where, judged from the face of the indictment and the record existing at the time the plea was entered, the charge is one that the government could not constitutionally prosecute under the Double Jeopardy Clause. As a matter of plain meaning, one obviously cannot "receive" an item without then also "possessing that item, even if only for a moment.

# VI. CONCLUSION

For the above and foregoing reasons, Woods's conviction and sentence must be vacated so that Woods can plea anew. In the alternative, it is respectfully requested that the Court hold an evidentiary hearing should be held so that Woods may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: July 18, 2018.

LAWRENCE WOODS
REG. NO. 49948-380
FCI BEAUMONT MEDIUM
FEDERAL CORR. INSTITUTION
P.O. BOX 26040
BEAUMONT, TX  77720
Appearing *Pro Se*

## DECLARATION OF LAWRENCE WOODS

I, Lawrence Woods, declarant herein, declare and attest to the facts in the above and foregoing Memorandum of Law in Support of Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody to be true and correct to the best of my knowledge under the penalty of perjury pursuant to 28 U.S.C. § 1746 and that I placed the Motion and Memorandum of Law in the mailbox of this institution on July 18, 2018.

LAWRENCE WOODS